[No. A083198. First Dist., Div. Three. June 9, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
RAFFEY MICHAEL JAMES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1, 2, and 3 of the Discussion.

**COUNSEL**

Wesley A. Van Winkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Violet M. Lee and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PARRILLI, J.**—Evidence Code sections 1108 and 1109 dramatically revised the law of evidence in sex offense and domestic violence cases by making prior offenses admissible to prove the defendant's propensity to commit a charged offense. Here we consider an issue currently dividing the Courts of Appeal. An early version of the standard jury instructions permitted the jury to infer from the defendant's prior offenses, proven by a preponderance of the evidence, that the defendant had a disposition to commit similar offenses, and to draw a further inference from this disposition that the defendant "was likely to commit and did commit the crime of which he is accused." Does this chain of inference violate the constitutional requirement that the prosecution prove each element of the charged offense beyond a reasonable doubt?

We hold the instructions violated due process by increasing the likelihood the jury would misuse evidence of prior offenses, opening the door to conviction based merely on propensity. Propensity evidence tends to be highly persuasive. By itself, however, it can never prove guilt. Suggesting that the jury can base its verdict directly on an inference from propensity undermines the state's obligation to prove each element of the charged offense. The error is compounded, and the state's burden of proving guilt beyond a reasonable doubt is further obscured, when the jury is told the prior offenses may be established by a preponderance of the evidence.

We are also convinced, however, that the due process problems created by these instructions are not the kind of structural error that necessarily infects the verdict in every case. The error may be deemed harmless if the reviewing court can determine that its effect on the verdict was negligible beyond a reasonable doubt.

Raffey Michael James appeals from a judgment convicting him of wilfully injuring the mother of his children. He raises a number of contentions, several of them involving the admission of prior domestic violence evidence under Evidence Code section 1109.[1] In the published portion of our opinion, we address the only claim with merit, which is that the prosecution's burden of proving each element of the charged offense was unconstitutionally

---

[1] Further unspecified statutory references are to the Evidence Code.

reduced by two instructions given to the jury—the pre-1999 version of CALJIC No. 2.50.02, and CALJIC No. 2.50.1, which together permitted the jury to find by a preponderance of the evidence that James had abused the victim in the past, and to infer from his past abuse that he had a disposition toward domestic violence and actually committed the charged offense. Under the circumstances of this case, however, it is clear the error did not affect the verdict.

## BACKGROUND

Raffey James and Leah McCovey have two children, who were two and four years old at the time of trial. In August 1997 James pleaded guilty to a charge of wilfully injuring McCovey, in violation of Penal Code section 273.5.[2] The court suspended a four-year sentence and placed him on probation. After his release from jail in September, James resumed living with McCovey. He told McCovey things would be different, and she decided to "give it one more try." However, after a couple of weeks James began accusing her of things, yelling at her in front of the children, keeping her from seeing her family, and hitting her, mostly on the arms. McCovey testified James "told me a lot of people in this world deserve to be hit and I was one of them."

On October 20, 1997, McCovey was at home with James, the children, and McCovey's nephew. James agreed to watch the nephew while McCovey and the children drove to get some food from a nearby restaurant. However, as she was leaving in a pickup truck James came out and said he wanted to go with them. McCovey refused, because there was not enough room in the truck. James "just went off," kicking the truck and screaming. He was holding the nephew in his arms. McCovey told him to give the boy to her. James put the child in the truck and McCovey began to drive away. James grabbed her through the driver's side window, pulled her hair, reached up under her shirt, and pinched her under the arm hard enough to leave a bruise. He then took the nephew back and said he would keep him. McCovey stopped the engine and got out of the truck, crying. She asked for her nephew so she could take him to a relative, but James refused. At that point, McCovey's sister Nina arrived with her supervisor from work. Nina yelled at James for making her child cry, and he yelled back at her. Nina left with her child, and McCovey reported the incident to the police.

James was charged with another violation of Penal Code section 273.5, based on the events of October 20. McCovey testified against James at a

[2]Penal Code section 273.5 prohibits wilful infliction of a corporal injury resulting in a "traumatic condition," which means any bodily injury, "whether of a minor or serious nature." (§ 273.5, subd. (c).)

probation revocation hearing. The court found he had violated his probation, and delayed sentencing until resolution of the pending charge.

At trial, McCovey recounted the October 1997 altercation described above, as well as two prior incidents of domestic abuse by James. In April 1997, she was getting ready to drive the children to her grandmother's house. James came out and started yelling at her, for reasons she did not understand. He grabbed the driver's side window to keep her from leaving. Then he walked around the car, opened the passenger door, reached over their youngest son, and grabbed McCovey by the throat, choking her for about 30 seconds. His fingers left bruises that lasted about four days. James continued arguing with McCovey until her grandparents came. McCovey reported the incident to the sheriff. This was the basis for James's guilty plea in August 1997.[3]

The second prior incident occurred in February 1994. McCovey and James argued when she refused to let him take her car. James left the house and walked down the road. McCovey drove after him with their son in the car, trying to persuade him to come home. James punched and kicked the car and threw a large rock on the hood, denting it. He then got behind the wheel, pushing McCovey aside. As he drove down the road, he hit McCovey with the back of his fist over and over, until she was lying on the floorboard. At one point he accidentally struck the child on the back of the head. When they got to a cousin's house, they sat in the car and argued. James drove to another person's house and got out. McCovey drove home and made a report to the police. She had multiple bruises.

McCovey's grandmother, Maude McCovey, testified she saw bruises on McCovey in February 1994, April 1997, and October 1997. Nina McCovey testified she went to McCovey's house after work on October 20, 1997, and found McCovey and James fighting. As she drove up, she saw James standing beside the truck with his hands reaching inside. McCovey was crying. Nina got her son from the truck and told James and McCovey not to fight in front of their children. Officer James Mooney testified he responded to McCovey's report of abuse by James on October 20, 1997, and took a picture of the bruise on her side. His report did not include any details about the altercation. It stated the pinch was inflicted about 9:30 in the morning. McCovey, however, testified the injury happened in the afternoon, and said she never reported an earlier time.

James testified he never hit, pinched, or physically abused McCovey after his release from jail in September 1997. He said that on October 20, he had

---

[3]At defense counsel's request, the court ruled the jury should not hear about this conviction, although counsel conceded the jury would learn James was in jail in September 1997.

expected to go with McCovey to the restaurant. There were no child seats in the truck, and he thought he would hold the boys. He agreed to stay home with McCovey's nephew, but an argument began when he told her their younger son should also stay with him. McCovey was screaming and spinning the wheels in the driveway. She rolled down the window and demanded her nephew. James unlocked the door, opened it, and handed the child to McCovey. Then they argued about the children not having seatbelts. He never grabbed or pinched McCovey, and she left after her sister arrived.

Defense counsel cross-examined McCovey about letters she had written to James while he was in jail after the April 1997 incident. In one, she said if anyone else was writing to him "I'll have someone severely beat her ass." She mentioned their problems with drugs. Both of them used methamphetamine. In another letter McCovey said, "There better not be anybody else writing you or coming to see you because you will be sitting in prison for a long time. Please don't lie to me and tell me if there is." McCovey admitted she was jealous because she knew James was having a romance with a woman named Fish. In another letter, she said "if I can't be with you, nobody will or they're going to have to wait a hell of a long time."

The jury found James guilty as charged. The court sentenced him to four years in prison, concurrent with a four-year sentence on his earlier conviction.

DISCUSSION

1.-3.*

. . . . . . . . . . . . . . . . . . . . . . . .

4. *The Jury Instructions on the Section 1109 Evidence Were Erroneous, But Harmless*

A. *The Instructions*

The court gave the jury the 1997 version of CALJIC No. 2.50.02,[6] which stated in relevant part:

"Evidence has been introduced for the purpose of showing that the defendant engaged in an offense involving domestic violence on one or more occasions other than that charged in the case. [¶] . . . [¶]

---

*See footnote, *ante*, page 1343.

[6]In 1999, CALJIC No. 2.50.02 was revised to include the caution: "However, if you find [by a preponderance of the evidence] that the defendant committed a prior crime or crimes involving domestic violence, that is not sufficient by itself to prove [beyond a reasonable doubt] that [he][she] committed the charged offense[s]. The weight and significance, if any, are for you to decide." (CALJIC No. 2.50.02 (1999 rev.) (6th ed. 1996).) The Use Note

"If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused.

"Unless you are otherwise instructed, you must not consider this evidence for any other purpose."

This instruction was immediately followed by CALJIC No. 2.50.1, as follows:

"Within the meaning of the preceding instruction, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed crimes other than that for which he is on trial.

"You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other crimes."

B. *The Parties' Contentions*

 James argues these instructions reduced the prosecution's burden of proof below the constitutionally required reasonable doubt standard. He claims the jury was provided with an "alternate pathway for the prosecution to establish its case without necessarily proving each element of [the] offense," permitting the ultimate issue of guilt to be determined based on prior misconduct established by a preponderance of the evidence. James acknowledges the rule that uncharged misconduct admissible for one of the specific purposes enumerated in section 1101 need only be proven by a preponderance. (*People v. Carpenter* (1997) 15 Cal.4th 312, 380-383 [63 Cal.Rptr.2d 1, 935 P.2d 708].) However, when the use of such evidence is not limited to matters such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and instead serves as proof of the ultimate fact that the defendant committed the charged offense, as permitted by former CALJIC No. 2.50.02, James contends the burden of proof beyond a reasonable doubt must apply to the prior offenses. Here, he claims the jury could reasonably have interpreted the instruction to allow them to convict James based on an inference from his prior acts of abuse, without necessarily making findings on the elements of the charged offense.

suggests the bracketed phrases concerning the standard of proof should be given "to remove any confusion that might arise if CALJIC No. 2.50.1 is given." (*Ibid.*)

James asserts the jury was "quite likely" to have applied the instructions in this way because the prior domestic violence evidence was so damning, and thus the error could not have been harmless beyond a reasonable doubt. In his reply brief, he contends the error was reversible per se, based on recent developments in the case law.

The Attorney General responds that prior domestic violence evidence falls within the well-established category of "evidentiary" as opposed to "ultimate" facts. (*People v. Medina* (1995) 11 Cal.4th 694, 763 [47 Cal.Rptr.2d 165, 906 P.2d 2].) The preponderance standard for proof of prior crimes was firmly upheld in *People v. Carpenter, supra,* 15 Cal.4th at page 382, and there is no reason to apply a different rule under section 1109. Moreover, CALJIC No. 2.50.1 only set forth the burden of proof that applied to the facts of the prior abuse, not the inferences of disposition and guilt. Those matters were addressed by CALJIC No. 2.01, which told the jury: "[E]ach fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt." The jury was instructed on the presumption of innocence and the prosecution's burden of proof beyond a reasonable doubt, and closing arguments reminded the jury of that burden. Therefore, the Attorney General argues the jury would have understood that while the prior acts could be proven by a preponderance, it had to be convinced of James's disposition beyond a reasonable doubt.

Furthermore, the jury was also instructed on the elements of the charged offense and told to "consider all of the evidence bearing upon every issue regardless of who produced it." The Attorney General claims a reasonable juror would understand that James's prior acts of domestic violence were merely circumstantial evidence of the charged offense, to be considered together with the other evidence to determine whether the prosecution had proven its case. Even if the instructions were erroneous, the Attorney General argues the error was harmless beyond a reasonable doubt, because it was "unimportant in relation to everything else the jury considered on the issue in question." (*Yates v. Evatt* (1991) 500 U.S. 391, 392, 404-405 [111 S.Ct. 1884, 1887, 1893-1894, 114 L.Ed.2d 432], disapproved on another ground in *Estelle v. McGuire* (1991) 502 U.S. 62, 72 [112 S.Ct. 475, 482, 116 L.Ed.2d 385].)

Both parties' arguments have compelling aspects. In sex offense cases arising under section 1108, the Courts of Appeal have split over the constitutionality of a guilty verdict returned by a jury instructed with CALJIC No.

2.50.1 and the pre-1999 version of CALJIC No. 2.50.01, which parallels former CALJIC No. 2.50.02. The same considerations govern the propriety of the parallel instructions, just as the constitutionality of section 1109 is supported by the same rationale that sustains section 1108. (*People v. Brown* (2000) 77 Cal.App.4th 1324, 1336 [92 Cal.Rptr.2d 433].) We rely on the work of our colleagues who have written on these topics to help us resolve the section 1109 issues before us.

### C. The Case Law

In *People v. Orellano* (2000) 79 Cal.App.4th 179 [93 Cal.Rptr.2d 866], Division Four of the Second Appellate District recently concluded there was a reasonable likelihood that former CALJIC No. 2.50.01 and CALJIC No. 2.50.1 misled jurors to believe they could infer the defendant's guilt merely from his commission of a prior offense, established by a preponderance of the evidence. The *Orellano* court held the error reversible, despite the giving of standard reasonable doubt instructions, because "we have no way of knowing whether the jury applied the correct burden of proof." (*Orellano*, at p. 186.) In *People v. Vichroy* (1999) 76 Cal.App.4th 92 [90 Cal.Rptr.2d 105], Division Two of the Second District held that even when the jury was instructed to determine beyond a reasonable doubt whether the defendant committed the prior offenses, it was reversible error to permit the jury to convict the defendant based *solely* on a finding that he had committed prior sexual offenses. (*Id.* at pp. 99-101.)

On the other hand, the Fifth District has decided that, when the challenged instructions were considered together with those on reasonable doubt and the elements of the charged offense, juries were not reasonably likely to return a conviction based on an unconstitutionally lenient standard of proof or on evidence of uncharged offenses alone; hence, no error arose from the use of former CALJIC No. 2.50.01 and CALJIC No. 2.50.1. (*People v. Van Winkle* (1999) 75 Cal.App.4th 133, 147-149 [89 Cal.Rptr.2d 28]; *People v. O'Neal* (2000) 78 Cal.App.4th 1065, 1078-1079 [93 Cal.Rptr.2d 248].) The same reasoning has been adopted by the Fourth District, Divisions Two (*People v. Waples* (2000) 79 Cal.App.4th 1389 [95 Cal.Rptr.2d 45]) and Three (*People v. Regalado* (2000) 78 Cal.App.4th 1056 [93 Cal.Rptr.2d 83].) The *Regalado* court suggested that, even if the instructions were erroneous, the error could be found harmless in view of the strength of the evidence against the defendant. (*Regalado*, at pp. 1063-1064, fn. 5.)

### D. The Hazards of the Inference from Propensity

■ Due process demands that each element of a charged offense be proven beyond a reasonable doubt. (*Sullivan v. Louisana* (1993) 508 U.S.

275, 277-278 [113 S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182]; *People v. Sakarias* (2000) 22 Cal.4th 596, 623 [94 Cal.Rptr.2d 17, 995 P.2d 152].) We believe that right is substantially eroded by instructions suggesting that a defendant's prior offenses may be sufficient to convict him of the charged crime. The tendency of propensity evidence to "overpersuade" the jury is beyond dispute. (*Michelson v. United States* (1948) 335 U.S. 469, 475-476 [69 S.Ct. 213, 218-219, 93 L.Ed. 168]; *Old Chief v. United States* (1997) 519 U.S. 172, 181 [117 S.Ct. 644, 650-651, 136 L.Ed.2d 574]; *People v. Alcala* (1984) 36 Cal.3d 604, 630-631 [205 Cal.Rptr. 775, 685 P.2d 1126]; *People v. Falsetta* (1999) 21 Cal.4th 903, 913-915 [89 Cal.Rptr.2d 847, 986 P.2d 182]; *People v. Orellano, supra*, 79 Cal.App.4th at p. 186.) Even when the trial court has screened the evidence under section 352, there is still a danger that the presumption of innocence will melt under the heat of emotions aroused by the defendant's prior offenses. The court's instructions should restrain the jury from misusing such evidence; instead, the instructions before us overstated the way the evidence could be used.

■ The enactment of sections 1108 and 1109 created an exception in sex offense and domestic violence cases to the long-standing common law and statutory rule excluding propensity evidence.[7] (*People v. Falsetta, supra*, 21 Cal.4th at p. 911.) Our Supreme Court has held that due process is not offended when the trial court determines the probative value of the propensity evidence outweighs its prejudicial effect, and properly instructs the jury on the presumption of innocence and the prosecution's burden of proof. (*Id.* at pp. 919-920; see also *People v. Johnson* (2000) 77 Cal.App.4th 410, 419 [91 Cal.Rptr.2d 596].) However, it is *not* proper to instruct the jury that if it finds the defendant committed other similar offenses it may infer he was disposed to commit *and did* commit the current offense. Such an instruction improperly permits a conviction based on the defendant's propensity. The jury must be reminded that propensity evidence alone cannot meet the prosecution's burden of proving the elements of the charged offense. Otherwise, the jury is prompted to use evidence of prior offenses in precisely the wrong way, as a substitute for proof of the current offense. (*People v. Orellano, supra*, 79 Cal.App.4th at pp. 185-186.)

Courts approving the use of former CALJIC No. 2.50.01 have reasoned the jury would avoid convicting the defendant solely on proof of his prior

---

[7]Under section 1101, other crimes evidence is specifically *not* admissible to prove the defendant's propensity; instead, it may only be used for specific purposes such as establishing the defendant's motive, opportunity, intent, preparation, plan, knowledge, or identity. (*People v. Kipp* (1998) 18 Cal.4th 349, 369 [75 Cal.Rptr.2d 716, 956 P.2d 1169].) Section 1101 codified a similar rule developed by case law. (See, e.g., *People v. Haston* (1968) 69 Cal.2d 233, 244 [70 Cal.Rptr. 419, 444 P.2d 91].) By removing the restrictions imposed by section 1101, sections 1108 and 1109 permit the jury in sex offense and domestic violence cases to consider evidence of prior offenses for any relevant purpose. (*People v. Falsetta, supra*, 21 Cal.4th at p. 922.)

offenses by reading the instruction together with those on the necessity of proof beyond a reasonable doubt of each element of the charged offense. These courts were confident the jury would properly consider the prior crimes as only one factor contributing to an ultimate finding of guilt beyond a reasonable doubt. (E.g., *People v. Van Winkle, supra*, 75 Cal.App.4th at pp. 147-148; *People v. Regalado, supra*, 78 Cal.App.4th at pp. 1062-1063; *People v. O'Neal, supra*, 78 Cal.App.4th at pp. 1078-1079.) The Attorney General makes the same claim here. We cannot agree that the reasonable doubt instruction and the instruction enumerating the elements of the current offense cure the defect in the specific instruction governing other crimes evidence, even when, as in this case, the jury is further instructed to "consider all the evidence" shortly after the invitation to infer guilt from propensity.

We think it reasonably likely the jury harmonized the instructions on the burden of proof, the elements of the offense, the consideration of all evidence, and the inference of guilt from propensity by concluding James's propensity was sufficient to establish the elements of the charged offense beyond a reasonable doubt, regardless of the strength or weakness of the other evidence. Three hundred years of jurisprudence recognizes juries are particularly susceptible to that suggestion. (*People v. Alcala, supra*, 36 Cal.3d at pp. 630-631.) If the court seems to approve a faster and shorter path to conviction, which coincides with the natural inclination to assume guilt from propensity, it is unrealistic to believe the jury will correct the wrong turns in that path by reasoning from other, more general instructions. In a particular case it may be so unlikely the jury actually rested its verdict solely on the inference from propensity that we may deem the instructional error harmless. That, however, is a different question from whether the jury was correctly instructed on the law.

The *Van Winkle* court itself was "overpersuaded" by the suggestive power of propensity evidence when it analyzed the nature of the inference permitted by former CALJIC No. 2.50.01. After noting that disposition may logically be inferred from a prior offense, the court stated: "The likelihood that a defendant will commit an offense is not an essential element of the present crime. However, inferring that he actually did commit the offense impliedly proves all of the essential elements of the current offense." (*People v. Van Winkle, supra*, 75 Cal.App.4th at p. 142.) Such "implied proof" is a logical impossibility and a violation of the defendant's right to proof of all elements of the charged offense beyond a reasonable doubt. Other crimes evidence can support an inference of propensity, but propensity alone cannot support a conclusive inference that the defendant committed the charged offense. Evidence connecting the defendant to the current offense is required, or any member of the criminal population with similar prior offenses

who is unable to establish an alibi might be convicted of the charged offense based on propensity. The plain terms of former CALJIC No. 2.50.01 permit such an unconstitutional result.

The *Van Winkle* court recognized that an instruction permitting the jury to draw an inference violates due process if it undermines the jury's responsibility to find the ultimate facts beyond a reasonable doubt. (*People v. Van Winkle, supra,* 75 Cal.App.4th at p. 142, citing *Ulster County Court v. Allen* (1979) 442 U.S. 140, 156 [99 S.Ct. 2213, 2224, 60 L.Ed.2d 777].) However, the *Van Winkle* court reasoned that because the inference from propensity was permissive and not mandatory under former CALJIC No. 2.50.01, and must be evaluated "as applied" in light of the facts of each case, it was consistent with the due process requirements discussed in *Ulster County*. (*People v. Van Winkle, supra,* 75 Cal.App.4th at pp. 142-144.) We find no support in *Ulster County* for the inference permitted by former CALJIC No. 2.50.02. In *Ulster County*, the Supreme Court reviewed a statutory evidentiary presumption and jury instructions implementing the presumption. It concluded that the presumption, which was permissive rather than mandatory, did not violate due process as applied to the facts of the case. (*Ulster County, supra,* 442 U.S. at p. 167 [99 S.Ct. at pp. 2229-2230].) The court made the following general comments on the constitutional issue before us:

"Inferences and presumptions are a staple of our adversary system of factfinding. It is often necessary for the trier of fact to determine the existence of an element of the crime—that is, an 'ultimate' or 'elemental' fact—from the existence of one or more 'evidentiary' or 'basic' facts. . . . The value of these evidentiary devices, and their validity under the Due Process Clause, vary from case to case, however, depending on the strength of the connection between the particular basic and elemental facts involved and on the degree to which the device curtails the factfinder's freedom to assess the evidence independently. Nonetheless, in criminal cases, the ultimate test of any device's constitutional validity in a given case remains constant: the device must not undermine the factfinder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt. . . .

"The most common evidentiary device is the entirely permissive inference or presumption, which allows—but does not require—the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant. . . . In that situation the basic fact may constitute prima facie evidence of the elemental fact. . . . When reviewing this type of device, the Court has required the party challenging it to demonstrate its invalidity as applied to him. . . .

Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the 'beyond a reasonable doubt' standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference. For only in that situation is there any risk that an explanation of the permissible inference to a jury, or its use by a jury, has caused the presumptively rational factfinder to make an erroneous factual determination." (*Ulster County Court v. Allen, supra,* 442 U.S. at pp. 156-157 [99 S.Ct. at pp. 2224-2225], citations omitted.)

A series of connections is permitted by former CALJIC No. 2.50.02. From the basic fact of a prior offense the jury may infer disposition (propensity), which is not an elemental fact. From disposition the jury may infer the defendant was "likely to commit" the charged offense. This likelihood is also not an elemental fact. Finally, the jury may infer the defendant's commission of the charged offense, which is the ultimate fact. The instructions do not literally predicate the ultimate inference on a finding of likelihood; rather, from the defendant's disposition the jury is invited to "infer that he was likely to commit and did commit the crime of which he is accused." By merging likelihood with actual commission of the offense, the instruction can be interpreted as permitting one sweeping inference of guilt based on the defendant's disposition. However, even if the jury does not infer guilt directly from disposition, and draws an intermediate inference that the defendant was likely to commit the charged offense, none of the connections permitted by the instructions are moored to any of the facts of the charged offense. The circumstances on which the inferences are based relate only to the defendant, not to the facts of the charged offense. Without considering those facts—and former CALJIC No. 2.50.02 did not require the jury to do so before inferring guilt—there is "no rational way the trier could make the connection permitted by the inference." (*Ulster County Court v. Allen, supra,* 442 U.S. at p. 157 [99 S.Ct. at p. 2225].)

Thus, the inferences permitted by former CALJIC No. 2.50.02 fail to meet the due process standards set out in *Ulster County.* The connection between prior offense evidence and guilt of the current offense is merely speculative without evidence supporting the current charge. Unlike the inference at issue in *Ulster County,* which was based on the presumption that a weapon found in a car is possessed by all the vehicle's occupants, inferences based on prior offenses do not depend on any facts of the charged crime. Therefore, the basic fact of a prior offense can never "constitute prima facie evidence of [an] elemental fact." (*Ulster County Court v. Allen, supra,* 442 U.S. at p. 157 [99 S.Ct. at p. 2224].) Propensity evidence relates directly to the defendant's character, and only indirectly to the current charges by comparison between

the circumstances of the current and prior offenses. Without this comparison, there can be no rational inference of any elemental fact, much less an inference of guilt.

The oft-cited observation that prior offense evidence "proves too much" does not mean it is strong evidence of the charged offense. Rather, it means the evidence proves much about the defendant's history that poses a danger of distracting the jury from its task—determining whether the charged offense was proven beyond a reasonable doubt. (*People v. Alcala, supra,* 36 Cal.3d at p. 631.) A defendant's prior offenses can have significant probative value if they are considered for the light they throw on the facts of the charged offense, not just for the bad light in which they place the defendant. (Cf. *People v. Falsetta, supra,* 21 Cal.4th at pp. 915-917.) However, former CALJIC No. 2.50.02, by permitting the jury to infer guilt based on the defendant's conduct on other occasions, diverts the jury's attention away from the elements of the current offense and thus "undermine[s] the fact-finder's responsibility at trial, based on evidence adduced by the State, to find the ultimate facts beyond a reasonable doubt." (*Ulster County Court v. Allen, supra,* 442 U.S. at p. 156 [99 S.Ct. at p. 2224].)

The problems with the instructions are not resolved by describing the inference they allow as permissive rather than mandatory. A permissive inference can permit too much. Telling the jury that prior offenses may support an inference of guilt invites the jury to misuse prior offense evidence. Section 1109 makes no mention of inferring guilt from propensity. It merely provides that section 1101, which prohibits using evidence of character or propensity to prove conduct on a specific occasion, does not apply in domestic violence cases.[8]

---

[8]Our Supreme Court has noted the improvements in the 1999 revision of CALJIC No. 2.50.01. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 923-924; see also *People v. Brown, supra,* 77 Cal.App.4th at p. 1336 [approving 1999 revision of CALJIC No. 2.50.02].) We agree the revised instruction is an improvement. However, to the degree it still suggests that other offense evidence is relevant only to infer guilt from propensity, we believe the instruction simultaneously overstates and unduly limits the use of such evidence. The *Falsetta* court acknowledged that other crimes evidence may be considered for a variety of purposes "such as establishing defendant's motive, intent, or identity (if those issues remain contested), or bolstering the young victim's credibility." (*People v. Falsetta, supra,* 21 Cal.4th at p. 922.) We believe an instruction in general terms would be more appropriate, leaving particular inferences for the argument of counsel and the jury's common sense. At a minimum, deleting the words "and did commit" from the standard instruction would remedy many of the concerns addressed above.

Using the facts of our case to determine selection of gender and singular/plural references, and assuming no complications arising from the different burdens of proof currently

E. *The Standard of Proof Problem*

CALJIC No. 2.50.02, permitting the jury to infer James's disposition and guilt from his prior domestic violence offenses, was immediately followed by CALJIC No. 2.50.1, which told the jury to apply the preponderance standard to determine whether James had committed the prior offenses. CALJIC No. 2.01, on the other hand, which the jury heard earlier as part of the court's general instructions on principles of evidence, told the jury that each fact supporting an inference essential to establish guilt must be proven beyond a reasonable doubt. As we have noted, the Attorney General argues these instructions can be harmonized and, taken together, properly led the jury to apply the preponderance standard to the prior domestic violence evidence and the reasonable doubt standard to the inferences drawn from that evidence. We disagree.

If the jury believed the propensity evidence was essential to establish guilt, then CALJIC No. 2.01 was in direct conflict with CALJIC No. 2.50.1. It is certain the jury would have been confused by the different standards of proof prescribed by these instructions. It is reasonably likely the jury would apply the preponderance standard given in the instruction tailored to the prior domestic violence evidence. In any event, the jury should not be placed in the position of resolving complicated standard of proof issues that perplex even judges. To assume a jury will accomplish this feat stretches to the breaking point the presumption that juries generally understand and faithfully follow the court's instructions. (See *Francis v. Franklin* (1985) 471 U.S. 307, 324-325, fn. 9 [105 S.Ct. 1965, 1976-1977, 85 L.Ed.2d 344]; *People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17 [286 Cal.Rptr. 801, 818 P.2d 84].)[9]

---

prescribed by CALJIC Nos. 2.01 and 2.50.1 (see subpt. E, *post*), we suggest the following instruction:

"You've heard testimony about other offenses involving domestic violence that are not charged in this case. I will refer to those as 'uncharged offenses' because they are not charged in this case. Before you can consider evidence of any uncharged offense, you must be satisfied by a preponderance of the evidence that the defendant committed that offense. If you are not satisfied by a preponderance of the evidence, you may not use that evidence for any purpose, and must disregard it entirely.

"If you conclude the defendant committed an uncharged offense, you may consider that evidence and weigh it together with any other evidence received during the trial to help you determine whether the defendant is guilty of the charged crime. The weight and significance of the evidence are for you to decide. However, if you find the defendant committed any or all of the uncharged offenses, that is not sufficient, by itself, to prove he committed the charged crime. You may not find the defendant guilty unless you are satisfied that each element of the charged crime has been proven beyond a reasonable doubt."

[9]In *People v. Medina, supra,* 11 Cal.4th at pages 763-764, our Supreme Court noted the appellant's contention that CALJIC Nos. 2.01 and 2.50.1 are in conflict. However, the *Medina*

■ As the Supreme Court made clear in *Ulster County*, the evidence supporting a permissive presumption is properly subject to the preponderance standard only "[a]s long as it is clear that the presumption is not the sole and sufficient basis for a finding of guilt." (*Ulster County Court v. Allen, supra,* 442 U.S. at p. 167 [99 S.Ct. at p. 2230].) The error in former CALJIC No. 2.50.02, suggesting that propensity is sufficient to support an inference of guilt, is exacerbated when jurors are told to use the preponderance standard in connection with propensity evidence. CALJIC No. 2.50.1 created the potential for the jury to convict James based on other offense evidence established by a preponderance, convinced from the court's instructions, and the inherent persuasive force of propensity evidence, that such evidence was enough to support a finding of guilt beyond a reasonable doubt.

The combined effect of former CALJIC No. 2.50.02 and CALJIC No. 2.50.1 distinguishes this case from *People v. Carpenter, supra,* 15 Cal.4th 312, which the *Van Winkle* and *Regalado* courts cited for the general rule that prior offenses need only be proven by a preponderance. (*People v. Van Winkle, supra,* 75 Cal.App.4th at pp. 145-147; *People v. Regalado, supra,* 78

---

court did not resolve the tension between the different standards of proof prescribed by the two instructions, observing merely that "special rules" govern the consideration of other crimes evidence. (11 Cal.4th at p. 764.)

We respectfully suggest the standard of proof rule stated in CALJIC No. 2.01 is an issue worthy of the high court's renewed attention, in view of the increased significance of other crimes evidence under sections 1108 and 1109. As noted in *Medina*, the rule that other crimes may be established by a preponderance is consistent with the general rule that only the ultimate facts are subject to proof beyond a reasonable doubt. (*People v. Medina, supra,* 11 Cal.4th at p. 763, citing *People v. Lisenba* (1939) 14 Cal.2d 403, 430 [94 P.2d 569].) Though prior offenses are usually established by direct evidence, a prior offense is itself circumstantial evidence relevant to the charged offense. (*People v. Falsetta, supra,* 21 Cal.4th at p. 920.) Thus, CALJIC No. 2.01 would apply to prior offense evidence in some cases. (See the Use Note to CALJIC No. 2.50.1 (1999 rev.) (6th ed. 1996), noting the potential for conflict with CALJIC No. 2.01, and suggesting CALJIC No. 2.01 would control "when the prosecution's evidence is primarily or entirely circumstantial.")

The rule that the reasonable doubt standard applies to evidentiary facts when the prosecution's case depends substantially on circumstantial evidence has murky origins, and its rationale has never been articulated. (*People v. Koenig* (1946) 29 Cal.2d 87, 92-93 [173 P.2d 1], disapproved on another ground in *People v. Gould* (1960) 54 Cal.2d 621, 630 [7 Cal.Rptr. 273, 354 P.2d 865]; *People v. Watson* (1956) 46 Cal.2d 818, 830-831 [299 P.2d 243].) Requiring circumstantial evidentiary facts to meet a higher standard of proof than direct evidentiary facts is inconsistent with the principle that "[c]ircumstantial evidence is as sufficient to convict as direct evidence." (*People v. Reed* (1952) 38 Cal.2d 423, 431 [240 P.2d 590]; *People v. Atkins* (1975) 53 Cal.App.3d 348, 361-362 [125 Cal.Rptr. 855]; CALJIC No. 2.00 [direct and circumstantial evidence are equally acceptable as means of proof].) The heightened standard is not included in the instruction on the sufficiency of circumstantial evidence to prove specific intent or mental state, which was held sufficient in *People v. Carpenter, supra,* 15 Cal.4th at page 383. (CALJIC No. 2.02.)

In our view, there is no legitimate basis for applying different standards of proof to direct and circumstantial evidentiary facts. The rule creates confusion in jury instructions and inconsistency in the law of evidence.

Cal.App.4th at p. 1061.) In *Carpenter,* the jury was instructed it could consider prior crimes evidence on the issue of intent if the prior crimes were established by a preponderance of the evidence. (*Carpenter, supra,* 15 Cal.4th at pp. 380, 383.) The defendant's contention that the instruction reduced the prosecution's burden of proof was based on speculation the jury *might* infer from several instructions that the element of intent could be proven by a preponderance. (*Id.* at p. 383.) By contrast, former CALJIC No. 2.50.02 gave the jury the court's permission to infer guilt from the prior crimes evidence, and immediately thereafter CALJIC No. 2.50.1 instructed the jury to determine by a preponderance of the evidence whether the defendant committed the prior offenses. Clearly, these instructions pose a greater danger of undermining the jury's appreciation of the ultimate standard of proof than the *Carpenter* instructions.

We note this is not the kind of case in which CALJIC No. 2.01 should be given. ■ CALJIC No. 2.01 is proper only when the prosecution relies on circumstantial evidence to prove the defendant's guilt from a pattern of incriminating circumstances, not when circumstantial evidence serves solely to corroborate direct evidence. (*People v. Shea* (1995) 39 Cal.App.4th 1257, 1271 [46 Cal.Rptr.2d 388]; cf. *People v. Wiley* (1976) 18 Cal.3d 162, 174-175 [133 Cal.Rptr. 135, 554 P.2d 881]; *People v. Malbrough* (1961) 55 Cal.2d 249, 251 [10 Cal.Rptr. 632, 359 P.2d 30].) Here, the prior domestic violence evidence merely corroborated the direct evidence of the charged offense provided by McCovey and her sister. In such a case prior offenses may be established by a preponderance of the evidence. (See *People v. Lisenba, supra,* 14 Cal.2d 403, 430 [prior offenses about which there may be some reasonable doubt may be sufficient when considered together with all the evidence to determine an ultimate fact beyond a reasonable doubt].) However, because former CALJIC 2.50.02 permitted James's guilt to be found solely and sufficiently from circumstantial evidence of propensity, the trial court in this case reasonably believed it had to give CALJIC 2.01.

F. *The Standard of Review*

■ In cases where the jury was given former CALJIC No. 2.50.02, we believe a careful examination of the record is required for the reviewing court to determine "whether it appears beyond a reasonable doubt that the error did not contribute to [the] jury's verdict." (*People v. Flood* (1998) 18 Cal.4th 470, 504 [76 Cal.Rptr.2d 180, 957 P.2d 869], restating the test established by *Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) Because the defect in the instruction infringes on the defendant's federal due process right to proof beyond a reasonable doubt of each element of the charged offense, it is clear the

federal test for reversible error applies. (*People v. Flood, supra*, 18 Cal.4th at p. 491.) Therefore, we disagree with the *Regalado* court's suggestion that any error under former CALJIC No. 2.50.01 could be held harmless if there was no reasonable probability the error affected the result, which is the standard governing errors of state law. (*People v. Regalado, supra*, 78 Cal.App.4th at pp. 1063-1064, fn. 5.)

Nor do we follow the approach taken by the *Orellano* court, which summarily concluded the charges had to be retried because it was not apparent whether the jury applied the proper burden of proof. In support of that reasoning the *Orellano* court cited *People v. Vichroy, supra*, 76 Cal.App.4th at page 101, which reached a similar conclusion, and *Sullivan v. Louisana, supra*, 508 U.S. at page 281 [113 S.Ct. at pages 2082-2083]. (*People v. Orellano, supra*, 79 Cal.App.4th at p. 186.) We believe the effect of the error must be determined in the context of each case. *Sullivan*, which involved an error that was reversible per se, is distinguishable.

In *Sullivan*, the jury was given a constitutionally defective reasonable doubt instruction, which equated "reasonable doubt" with "grave uncertainty" and "actual substantial doubt," and required a "moral certainty" of guilt. (*Sullivan v. Louisana, supra*, 508 U.S. 275, 277 [113 S.Ct. 2078, 2080]; *Cage v. Louisana* (1990) 498 U.S. 39, 41 [111 S.Ct. 328, 329-330, 112 L.Ed.2d 339].) The court reasoned that as a result of the instruction there was no jury verdict of guilty beyond a reasonable doubt. Any attempt at review for harmless error could only hypothesize a guilty verdict conforming to the constitutionally required standard of proof. Such an exercise by an appellate court would deprive the defendant of his Sixth Amendment right to have a jury decide his fate. (*Sullivan v. Louisana, supra*, 508 U.S. at pp. 279-280 [113 S.Ct. at pp. 2081-2082].) This instructional error qualified as a "structural error" of the kind that defies analysis by harmless-error standards. (*Id.* at pp. 281-282 [113 S.Ct. at pp. 2082-2083].)

The *Sullivan* court recognized, however, that most constitutional errors are subject to harmless-error analysis. (*Sullivan v. Louisana, supra*, 508 U.S. at p. 279 [113 S.Ct. at pp. 2081-2082]; see also *Neder v. United States* (1999) 527 U.S. 1, 8 [119 S.Ct. 1827, 1833, 144 L.Ed.2d 35].) The United States Supreme Court has repeatedly held that the *Chapman* test may be applied to verdicts rendered by juries instructed on mandatory presumptions violating the defendant's right to proof beyond a reasonable doubt of each element of the charged offense. (E.g., *Yates v. Evatt, supra*, 500 U.S. at p. 403 [111 S.Ct. at pp. 1892-1893]; *Carella v. California* (1989) 491 U.S. 263, 267 [109 S.Ct. 2419, 2421-2422, 105 L.Ed.2d 218]; *Rose v. Clark* (1986) 478 U.S. 570, 579-581 [106 S.Ct. 3101, 3106-3107, 92 L.Ed.2d 460].) We see no

reason for different treatment of instructional error involving a permissive inference. Unlike the defective reasonable doubt instruction in *Sullivan*, an instruction permitting the jury to infer guilt from propensity does not *necessarily* vitiate the jury's verdict. It is a trial error rather than a structural error. (See *People v. Flood, supra*, 18 Cal.4th at p. 503.)

If the reviewing court cannot tell whether the jury's verdict depended on the improper inference of guilt permitted by former CALJIC No. 2.50.02, that is a reason to find the error reversible in the particular case, not a reason to hold the error reversible per se. (See *People v. Swain* (1996) 12 Cal.4th 593, 607 [49 Cal.Rptr.2d 390, 909 P.2d 994] [erroneous instruction on implied malice was not harmless, where it could not be determined whether jury found express or implied malice].) Nor is the inherently prejudicial nature of propensity evidence a justification for declining to perform harmless error review. In *People v. Cahill* (1993) 5 Cal.4th 478 [20 Cal.Rptr.2d 582, 853 P.2d 1037], our Supreme Court held that even though confessions often have a "bombshell" effect on the defense, the improper admission of a confession is not reversible per se; it is simply "much more likely to be prejudicial under the traditional harmless-error standard." (*Id.* at p. 503.)

*Yates v. Evatt, supra*, 500 U.S. 391, provides a discussion of the *Chapman* standard that is useful for review of the instructional error created by former CALJIC No. 2.50.02. There, the Supreme Court reviewed instructions on two mandatory presumptions of malice, one based on the intentional commission of an unlawful act, and the other on use of a deadly weapon. Though the jury was told the presumptions were rebuttable, the instructions suggested the presumptions retained their probative force even if rebutted. The instructions also tended to shift the burden of proof on malice to the defendant. (*Yates v. Evatt, supra*, 500 U.S. at pp. 401-402 [11 S.Ct. at pp. 1891-1892].)

Under *Chapman*, the question is whether there is a reasonable doubt that the error contributed to the verdict. The *Yates* court explained that saying an error did not "contribute" to the verdict does not mean the jury was unaware of the unconstitutional presumption; to the contrary, the jury is presumed to have followed the instructions it was given. Rather, the error did not "contribute" to the verdict if it is unimportant in relation to everything else the jury considered on the question of the defendant's guilt, as revealed in the record. (*Yates v. Evatt, supra*, 500 U.S. at p. 403 [111 S.Ct. at pp. 1892-1893].) The reviewing court must make a judgment about the significance to reasonable jurors of the presumption permitted by the instruction, measured against the other evidence they considered. (*Id.* at p. 404 [111 S.Ct. at p. 1893].)

First, the reviewing court asks what evidence the jury actually considered in reaching its verdict, under the instructions given by the trial court. Then it must weigh the probative force of that evidence against the force of the improper presumption. It is not enough that the jury considered evidence from which it could have returned a guilty verdict without relying on the presumption. The question is whether, independently of the presumption, the jury actually rested its verdict on evidence establishing guilt beyond a reasonable doubt. That inquiry cannot be a subjective one into the jurors' minds. Therefore, it must be approached by asking whether the force of the evidence considered by the jury in accordance with the instructions is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on that evidence would have been the same in the absence of the improper presumption. It is only when the effect of the inference is comparatively minimal that it can be said the error did not contribute to the verdict. (*Yates v. Evatt, supra,* 500 U.S. at pp. 404-405 [111 S.Ct. at pp. 1893-1894].)

There is one significant distinction between the analysis in *Yates* and our review of the erroneous inference permitted by former CALJIC No. 2.50.02. Because the presumption at issue in *Yates* was mandatory, the court had to assume the jury applied the presumption if the predicate facts were established. Because the inference before us was permissive, however, we may conclude the error did not contribute to the verdict either if the evidence is so strong that the effect of the inference from propensity alone is insignificant, or if the evidence is such that we are convinced beyond any reasonable doubt the jury did not actually draw the improper inference.

In any event, we must presume the jury followed former CALJIC No. 2.50.02 and CALJIC No. 2.50.1, and understood that if it found the prior offenses were established by a preponderance of the evidence, it could infer the defendant's guilt of the current offense from his criminal disposition. We then consider the strength of all the evidence against the defendant that the jury would have considered under the instructions as a whole. In determining whether the impact of the inference is negligible, we keep in mind the tendency of propensity evidence to have a disproportionate impact on the jury. The question is not, however, whether the verdict would have been the same had the prior offense evidence not been admitted. The jury could properly consider the evidence under section 1109. The question is whether the verdict was affected by the erroneous instruction suggesting the jury could infer guilt directly from the propensity evidence.

G. *The Error Was Harmless in This Case*

McCovey's testimony about the charged offense was sufficient to establish the elements on which the jury was instructed: (1) wilful infliction

of bodily injury, (2) resulting in a traumatic condition. (Pen. Code, § 273.5.) Her testimony was corroborated not only by the evidence of James's prior domestic violence, but also by the photograph of her bruise, her sister's account of the altercation, and the testimony from Officer Mooney and McCovey's grandmother about her injury. On the other hand, James impeached McCovey's credibility with evidence of the threats she made in her letters to him while he was in jail, the lack of detail in Mooney's report, and the discrepancy between his report and McCovey's testimony on the time of the offense. The prosecution presented a strong case, but we cannot say the evidence was so strong as to overwhelm the force of the inference of guilt permitted by former CALJIC No. 2.50.02. However, we must also ask whether the jury would have applied the instruction literally, to infer James's guilt simply from the propensity established by his prior offenses without considering the strength or weakness of the charged offense.

We are convinced this did not occur. The prior offenses were strikingly similar to the charged offense. Each time, McCovey was in a vehicle with a child or children and James launched an assault from outside. The pattern of the abuse was so obvious it is overwhelmingly clear that the jury would have considered all the instances together. The prosecutor did not argue the improper inference to the jury. She asked the jury to consider the pattern of abuse established by all the evidence, and to "[p]lug in the facts you have about October 20th and then look at the prior crimes and apply that through the law to the facts you have."[10] It was proper for the jury to consider the prior offenses, established by a preponderance of the evidence, together with

---

[10]The prosecutor's entire argument on the instruction was as follows: "Keep in mind that the jury instruction will tell you, as to the past history of the defendant, that not only can you use that past history to determine whether or not the defendant was the abuser here, but keep in mind that that's one, one element for that determination. Keep in mind that not only can you use the prior incidents to make that determination, but look at the facts.

"[Defense counsel] wants you to believe that all I have proved is the prior violence. Not true. We've not only proved the prior violence, we proved the violence on October 20th. Plug in the facts you have about October 20th and then look at the prior crimes and apply that through the law to the facts you have. The facts are—that you have [and] we have Leah [McCovey] and Maude [McCovey's grandmother] and Nina [McCovey's sister] all telling you information that duck tails [sic] with each other."

We note that while the prosecutor may have approached the improper inference in the first paragraph quoted above, by saying the jury could "use that past history to determine whether or not the defendant was the abuser here," she never urged the jury to draw the unconstitutional inference. Instead, she immediately told the jury to consider his past history as only a part of the evidence supporting James's guilt of the charged offense. Defense counsel conceded James's commission of the prior offenses, but did not refer to the inference permitted by former CALJIC No. 2.50.02 during his closing argument.

We do not consider comments by counsel during closing argument to determine whether the error in the instruction was cured. The jurors were told that if anything counsel said conflicted with the court's instructions, they must follow the instructions. (CALJIC No. 1.00.) We review counsel's remarks as part of our harmless error analysis only for the limited purpose of determining whether the arguments exacerbated the instructional error.

the evidence of the charged offense in order to reach a verdict of guilt beyond a reasonable doubt. On this record, we conclude the prior domestic violence evidence rightly served as corroborative circumstantial evidence supporting the credibility of McCovey's testimony and the other evidence of the charged offense.

We are satisfied beyond a reasonable doubt that the jury based its verdict on all the evidence, and did not infer James's guilt simply from his past offenses, as permitted by the erroneous instruction. The defect in the instruction did not contribute to the verdict, because on the record before us the jury would not have used the improper inference as a substitute for proof of the charged offense. The error in the instruction pales when evaluated in context with everything else the jury properly considered on the question of James's guilt. (*Yates v. Evatt, supra,* 500 U.S. at p. 403 [111 S.Ct. at pp. 1892-1893].) Therefore, we affirm the judgment.

### DISPOSITION

The judgment is affirmed.

McGuiness, P. J., and Corrigan, J., concurred.

On June 30, 2000, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied September 27, 2000.