Filed 7/2/14  P. v. Martin CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>GARRETT LEMAR MARTIN II,<br><br>        Defendant and Appellant. | A140116<br><br>(Contra Costa County<br>Super. Ct. No. 51221506) |

        After a jury trial, Garrett Lemar Martin II was found guilty of violating Penal Code[1] sections 273.5, subdivision (a) (inflicting corporal injury on a spouse, cohabitant, or child's parent, a felony) and 368, subdivision (b)(1). The defendant now challenges the sufficiency of the evidence supporting each conviction.  He also contends the trial court abused its discretion in not reducing the felony conviction to a misdemeanor.  We find no error here and affirm the convictions.

**STATEMENT OF THE CASE**

        The information in this case was filed December 11, 2012, charging defendant with three counts: (1) violation of section 273.5, subdivision (a), a felony (inflicting corporal injury to a spouse, cohabitant, or child's parent); (2) violation of section 368, subdivision (b)(1), a felony (inflicting injury on an elder or dependent adult), and (3) violation of section 273a, subdivision (b), a misdemeanor (child endangerment).

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

On July 12, 2013, the jury convicted defendant of count one as charged (§ 273.5, subd. (a)) and the lesser included offense of count two, misdemeanor elder abuse (§ 368, subd. (c)).

On October 4, 2013, the trial court suspended the imposition of sentence and placed defendant on probation for three years, with the condition he serve four months in the county jail.

Defendant made a timely appeal.

## STATEMENT OF FACTS

Defendant attended a football game involving the Oakland Raiders on November 4, 2012 with a friend. While at the game, defendant consumed between four and six shots of alcohol. He was inebriated when he returned home. Defendant lived with his girlfriend, Erica, and their six-month-old son Andre. Also dwelling in the residence were Duane, Erica's 72-year-old godfather, her two sisters, and Erica's brother. Defendant arrived at the residence around 7:30 p.m.

The couple began to argue upon defendant's arrival. As she went upstairs to check on the infant, defendant followed her, making inappropriate remarks and challenging her. In the bedroom, he pushed her to the ground. When she went to the bathroom, he followed her and struck her. To avoid defendant and his behavior, Erica went into the closet, but he followed her there also. He grabbed her and pushed her head against the wall of the closet. He began choking her and this continued for approximately 15 seconds. Erica had trouble breathing. Eventually she was able to break away and exit the closet.

While this was going on, Erica screamed out her request for defendant to stop hitting her. This got the attention of her godfather, Duane. The elder had been asleep but awoke at the sound. He went into her bedroom and saw defendant grabbing Erica very tightly with one hand while he held the child in the other hand. Duane tried to free his goddaughter from defendant. Defendant then let Erica loose but proceeded to punch Duane, knocking him to the floor. Erica picked up the infant and fled the scene. As she went down the stairs, defendant pursued her and grabbed her by the hair on the stairway.

2

He then pulled her up the stairs by her hair back to the bedroom.  Again Duane attempted to intervene but was pushed to the floor by defendant.

When defendant struggled with Duane and pushed him down a second time, Erica managed to grab the infant and run out of the house.  The other members of the family at home fled behind her.  Defendant chased the family down the stairs, yelling and cursing them.  He then shut them outside in the evening air and locked the front door.

The police came to the home; Officer Robert Myers was the first officer to arrive. When he arrived at 11:30 p.m., all the family except defendant were outside.  Erica advised the officer about the behavior of defendant and that he was inside the home.  She told Myers defendant hit both her and her godfather while holding the infant under his other arm.  She specifically advised Myers defendant struck Duane several times in the face.  Myers physically observed red marks on the arms of Erica, resembling "punch" marks, and noticed red marks around her neck, consistent with an attempt to strangle her. Erica confirmed defendant had choked her twice and she had almost lost her breath.  A second officer at the scene, Robert Thompson, saw bruising to Erica's neck and some scratches on her left arm.  The prosecutor introduced photographs demonstrating the red marks on her neck, a red mark on her shoulder, and scratches on her arm.

The officers also noticed Duane had redness on his face, which was depicted in photos, and he complained of pain where he had been punched and pushed by defendant. An ambulance was summoned to take him to the hospital for observation.  Duane's discomfort lasted three days.

When he was arrested, and after he was advised of his rights, defendant admitted he was drunk when he came home and began arguing with Erica.  Defendant did not present any defense to the charges.

## ANALYSIS

### I. There is Substantial Evidence to Support Defendant's Conviction for Domestic Violence.

Defendant contends there is insufficient evidence to support his conviction for count one because the prosecutor failed to present sufficient evidence demonstrating he

3

"willfully" caused a "traumatic condition" to Erica.  We find in this general intent crime, there is sufficient proof Erica sustained a "traumatic condition" from the behavior of defendant.

When we assess the sufficiency of the evidence to support a conviction, we employ the substantial evidence analysis.  (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 (*Jackson*).)  After reviewing all the evidence in the light most favorable to the prosecution, we ask whether any rational trier of fact could have found the essential elements for a conviction beyond a reasonable doubt.  (*Ibid.; People v. Bonin* (1989) 47 Cal.3d 808, 850.)  We resolve evidentiary and credibility conflicts in favor of the jury's verdict, and accept reasonable inferences in favor of what the jury has done.  Substantial evidence is evidence of legally ponderable significance which is, by its nature, reasonable in nature, credible, and of solid value.  (*People v. Clay* (1984) 153 Cal.App.3d 433, 457.)

The trial court advised the jury the following elements must be proven by the prosecutor to convict defendant of domestic violence under section 273.5, subdivision (a):  "the defendant willfully and unlawfully inflicted a physical injury on his cohabitant or the mother of his child; [¶] . . . the injury inflicted by the defendant resulted in a traumatic condition; [¶] . . . [and] the defendant did not act in self-defense or in defense of someone else."  The jury was also advised, "[s]omeone commits an act willfully when he or she does it willingly or on purpose," and that a "traumatic condition is a wound or other bodily injury whether minor or serious caused by the direct application of physical force."

We find the evidence supports each of the required elements to sustain this charge. There is no question defendant and Erica were living together and she is the mother of his child, Andre.  There is also no dispute defendant struck her in the bedroom, pursued her into the closet where he forcibly placed his hands around her neck, and then grabbed her by the hair as she tried to flee, pulling her up the stairs.

The focus by defendant is on the element of traumatic condition.  As the statute states, a traumatic condition is "a condition of the body, such as a wound, or external or internal injury, . . . whether of *a minor or serious nature,* caused by *physical force.*"

4

(§ 273.5, subd. (d), italics added.) Under this statute, the focus is whether the injury is observable by another. (*People v. Silva* (1994) 27 Cal.App.4th 1160, 1166.) The reddening of the skin on one's face or nose is enough. (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 771; see also *People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085.) If there is *no* evidence of any injuries, bruising, or scratches, then there would be insufficient evidence of traumatic condition. (*People v. Abrego* (1993) 21 Cal.App.4th 133, 137-138.)

In this case, the record supports the finding of the "traumatic condition" element. The victim was tossed to the ground in her bedroom, chased into the bathroom, and then followed into the closet. She was choked at least one time, with corroborating marks placed on her neck that were noted by two police officers who came to the home shortly after the assault occurred. Erica was also grabbed by her hair and pulled up the stairs. Family members also testified regarding the episode. Additionally, photographs were introduced by the prosecution and reviewed by the jury to assist in the determination whether trauma was inflicted here. Under the cases, testimony by a victim, and the corroborating factors of photographic evidence and eyewitness testimony are sufficient to satisfy the proof needed for domestic violence. (*People v. James* (2000) 81 Cal.App.4th 1343, 1363-1364.) This is the level of evidence we have here, and it is also enough to sustain the conviction.

## II. Substantial Evidence Supports Defendant's Conviction for Willfully Inflicting Unjustifiable Pain on Duane, Age 72.

In our discussion above on the sufficiency of evidence for count one, we stated the primary features of our review of the evidence under *Jackson, supra,* 443 U.S. 307. The same principles apply to the elder abuse conviction.

The trial court advised the jury that to sustain a conviction for violating section 368, subdivision (c), the prosecution must prove: "the defendant willfully inflicted unjustifiable physical pain or mental suffering on Duane Ross; [¶] . . . Duane Ross is an elder; [¶] . . . [and] when defendant acted, he knew or reasonably should have known that Duane Ross was an elder." The jury was further advised, "[s]omeone commits an act

5

willfully when he or she does it willingly or on purpose," and, "[u]njustifiable physical pain or mental suffering is pain or suffering that is not reasonably necessary or is excessive under the circumstances."

Since Duane is 72 years old, he is an elder for purposes of the statute. Also, the element of "willfulness" requires only a showing of *general* criminal intent — evidence defendant struck Duane on purpose. It is unnecessary for the prosecution to establish a particular reason for defendant's misconduct. (*People v. Atkins* (2001) 25 Cal.4th 76, 85.) At the very least, the evidence supports this interpretation of the evidence and the jury's finding here. Duane advised the police on the night of the offense he was knocked down by defendant two times. On the first occasion, defendant slugged the elderly parent as the man came forward to assist his goddaughter who was being choked by Martin. The second time, defendant pushed him when the elderly parent tried to assist his goddaughter who was being pulled up the stairs. Finally, the jury was instructed on self-defense, as requested by defendant, to challenge the elder abuse claim. The jury's verdict establishes they rejected that theory. The punishment inflicted on Duane was unnecessary and excessive. Defendant himself acknowledged he should have left the residence instead of challenging the elderly Duane in his home. We find the evidence sufficient to sustain this conviction.

### III. The Trial Court Did Not Abuse Its Discretion When It Chose Not to Reduce the Domestic Violence Conviction to a Misdemeanor.

The final argument raised by defendant is the failure by the trial court to reduce his domestic violence conviction to a misdemeanor at sentencing. We find the trial court engaged in a fair and neutral hearing on this issue and validly chose to refrain from reducing the felony conviction to a misdemeanor at defendant's sentencing.

We start our review of this issue with the understanding that the trial judge here is an experienced member of the trial bench in Contra Costa County. He is not one who makes decisions based on "conclusion[s]" of a "zealous prosecutor." Instead, we find a review of this matter is compatible with fairness and due process.

6

On October 3, 2013, defendant filed his motion to reduce the felony domestic violence conviction to a misdemeanor under section 17, subdivision (b). He noted Erica and Duane each wished this reduction so defendant could obtain employment to support his child. They also noted defendant acted out of character and expressed remorse for his behavior.

The hearing on the motion was held the following day, October 4. The prosecutor argued, perhaps strenuously, against the motion. The court articulated its view of discretion under section 17 but, instead of reducing the conviction at sentencing to a misdemeanor, advised defendant it would consider the request if defendant was "successful on probation." The court viewed the event as "significant;" that it was "unprovoked," as well. The court also noted the positive traits defendant possessed, such as his lack of criminal history, military experience, and age. By *sentencing* defendant to a felony with the potential of reduction to a misdemeanor upon completion of probation, the trial court advised defendant, "[m]y goals in this sentence are to keep you to your word, that is to stop drinking, to refrain from abusing [Erica] in any fashion, and obviously [Duane] as well. I also want to kept the availability of a misdemeanor disposition for you if you do succeed." The court was "maximizing the incentive." Additionally, the court decided the jail time could be served "on either electronic home detention or county parole." These sentencing features imposed after a domestic violence conviction suggest to this court the trial judge engaged in an individualized sentencing determination that was case-appropriate. Being optimistic and holding defendant to his stated promises at sentencing, the trial court may not have reduced the felony at sentencing on October 4, 2013, but future reward to defendant was clearly indicated if he was successful on probation. This is correct judicial behavior.

Not all wobblers need be reduced under section 17. As appellate justices, we are only asked to assess the matter for abuse of discretion. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 976-977.) The defendant bears the burden of demonstrating the court acted in an irrational or arbitrary manner. Without such a showing, we will presume the trial judge acted to attain legitimate sentencing goals and

7

will not set aside the process in which the court engaged. (*Id.* at pp. 977-978.) We find no error here.

## DISPOSITION

We find the evidence sufficient to sustain defendant's conviction on each of the counts where guilt was found by the jury. We also conclude the trial court did not abuse its discretion in not reducing the domestic violence conviction to a misdemeanor at sentencing. Therefore, the conviction is affirmed.


_____

Dondero, J.


We concur:


_____

Margulies, Acting P.J.


_____

Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.