Filed 9/27/13  P. v. Perkins CA5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F065128 |
| v. | (Super. Ct. No. VCF258389) |
| JONATHON ABENIDO PERKINS, | **O P I N I O N** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Melinda Myrle Reed, Judge.

Jesse Morris, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Rebecca Whitfield, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Poochigian, Acting P.J., Detjen, J., and Peña, J.

A jury convicted appellant, Jonathon Abenido Perkins, of making criminal threats (Pen. Code, § 422), a felony; misdemeanor assault (Pen. Code, § 241, subd. (a)); and misdemeanor battery (Pen. Code, § 243, subd. (e)(1)). In a separate proceeding, the court found true allegations that appellant had suffered a prior conviction that qualified as both a prior serious felony conviction under Penal Code section 667, subdivision (a) and as a "strike."[1] The court imposed a nine-year prison sentence, consisting of four years on appellant's felony conviction—a two-year term doubled pursuant to the three strikes law (Pen. Code, §§ 667, subd. (e)(1); 1170.12, subd. (c)(1))—plus five years on the prior serious felony enhancement. The court did not impose a sentence on either of appellant's misdemeanor convictions.

On appeal, appellant contends (1) the evidence was insufficient to support his conviction of making criminal threats, and (2) the court erred in admitting evidence of prior uncharged acts of domestic violence. We affirm.

## FACTUAL BACKGROUND

*Prosecution Case*

<u>*The Instant Offenses – The Victim's Testimony*</u>

On September 24, 2011 (September 24), Rosamaria Muro wanted her infant son to see appellant, who is the child's father, and she and appellant agreed to meet at the 99 Cent Store (the store) in Visalia.[2] Muro drove to the store and parked in front, near where appellant was standing. With Muro and her son in the car were "Ivy, Katie and Shelby" (collectively, "the girls"), three sisters of Muro's ex-boyfriend, Joshua Munoz.

---

[1] We use the term "strike" as a synonym for "prior felony conviction" within the meaning of the "three strikes" law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12), i.e., a prior felony conviction or juvenile adjudication that subjects a defendant to the increased punishment specified in the three strikes law.

[2] Information in this section is taken from Muro's testimony.

2

Although Muro and Munoz were not dating at the time, Muro maintained relationships with the girls and saw them "[e]very weekend."

Appellant approached the passenger side of the car, and he and Muro began talking. Appellant had a friend with him. The conversation continued as appellant moved to the driver's side of Muro's car, with his friend remaining on the passenger side. The conversation led to an argument. Appellant wanted Muro to bring the baby to his residence, and Muro refused, "a couple of times," because when appellant gets angry, "he tends to get physical." After the last time Muro refused, appellant hit her with his fist on the left side of her neck, and told her if she did not go to his residence, he was going to have her and the baby killed and her parents' house "shot up." The blow left Muro in pain and unable to catch her breath for "[a] couple of seconds." She was afraid. She believed appellant was "capable" of carrying out these threats because he was an "active gang member."

After threatening Muro, appellant told her to be at his residence at a certain time, "and then he reached over, kissed [Muro] and ... left," at which point Muro drove off. At some point before appellant walked away, Muro, out of fear, agreed to appellant's demand.

Muro was scared so she drove to a restaurant where her mother worked so she could "calm down." The restaurant was located "right across the street from [the store]." Thereafter, she drove the girls home and, from in front of their house, called the police. After calling the police, she drove to the police station, where she spoke to a police officer.

*The Instant Offenses – Other Testimony*

Visalia Police Officer Isaac Stephens testified to the following: He "[took] a report of domestic violence" from Muro on September 24. She was "[c]alm, but shaking." She "look[ed] like she had been scared."

3

Katie, age nine, Shelby, age 13, and Ivy, age 16, each testified to being in the car with Muro when appellant struck Muro in the neck, that when struck, Muro began crying, and that Muro looked scared.

Katie indicated that after Muro was struck, Muro drove to "Me & Ed's," and that Muro was "still shook up then" and "still crying."

Ivy indicated that Muro drove to the pizza restaurant after she was struck. She further testified:

"Q. Did [Muro] still look scared to you?

"A. She kind of cleared it up. [¶] ... [¶]

"Q. Did she calm down while she was there?

"A. Yeah."

*Evidence of Uncharged Acts*[3]

The prosecution presented evidence of two uncharged acts of domestic violence. First, Michelle Echeverria testified to the following: On one occasion in 2009, she was at home, speaking on the telephone with appellant, when appellant said he had "just heard a guy." Echeverria explained no one was with her and that appellant was hearing the television. Appellant responded, "Well, I'll be right over there," ending that statement with the epithet, "Bitch." Subsequently, appellant arrived at Echeverria's house and started "banging" on her bedroom window, demanding to be let in. Appellant then "started kicking in [the] door," and Echeverria, thinking she could calm appellant down, unlocked the door and let him in. At that point, appellant grabbed Echeverria; pushed her; said, "Bitch, I'm going to kill you"; grabbed her cell phone out of her hand;

---

[3] The court denied appellant's motion in limine to exclude the evidence summarized in this section.

"slammed it on the floor"; and said, "Now try to call the cops, bitch." Thereafter, appellant and Echeverria "kind of got in a scuffle," and appellant "took off out the door."

The previous day, appellant "said something [to Echeverria] about he was going to kill [her] and he was going to get a gun. That sort of thing."

Muro was the victim of the second uncharged act. She testified to the following: On August 30, 2011 (August 30), Muro and appellant were living together. On that day, Muro "had the baby in the car," she and appellant were arguing, and at one point during the argument appellant took the child out of the car and into the couple's apartment. Muro yelled at appellant to "bring *my* son back." (Italics added.) During the course of their relationship, there had been an "issue" about Muro referring to the child as hers rather than "ours."

When Muro referred to "my son" on this occasion, appellant "came running at [Muro]" with "balled up … fists acting like he was gonna hit [her]." Muro, in an attempt to get away from appellant, tripped and fell to the ground. Appellant then stood over Muro and said, "he would beat [her] up."

Visalia Police Officer Ryan Park testified that on August 30, while investigating a report of a "disturbance," he spoke to appellant, who stated the following: He and Muro, who were the parents of a child, were arguing, and "she said that the child was not his." Appellant told her "if she said [the child] wasn't his son again, he would beat the shit out of her." He also stated that if his son had not been present, "he probably would have beaten the shit out of her."

### Defense Case

The defense presented one witness, Alejo Ortega. Ortega testified to the following: He was with appellant at the store one day near the end of summer in 2011. The mother of appellant's child drove up. Ortega and appellant exited the store and, standing on the passenger side of the car, appellant began talking to her. Appellant

5

continued to talk to the woman as he moved to driver's side of the car, at which point Ortega walked to a nearby fire hydrant and sat on it. Ortega could hear "[f]or the most part" what appellant was saying to the woman and Ortega could see appellant "the entire time that conversation was going on." Appellant struck his hand on the window of the car but he did not hit anybody. Ortega did not hear appellant make any threats.

## DISCUSSION

### *Sufficiency of the Evidence*

As indicated above, appellant challenges the sufficiency of the evidence supporting his conviction of making criminal threats.

### Standard of Review

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence— evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.... '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."'" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

We resolve neither credibility issues nor evidentiary conflicts. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "Reversal on this ground [i.e., insufficiency of the evidence] is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) "Even when there is a significant amount of countervailing evidence,

6

the testimony of a single witness that satisfies the standard is sufficient to uphold the finding." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052.)

*Elements of the Offense*

Penal Code section 422 provides, in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally ... is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished ...." (Pen. Code, § 422, subd. (a).) Thus, in order to establish a violation of Penal Code section 422, the prosecution must prove the following five elements: "'(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.'" (*In re George T.* (2004) 33 Cal.4th 620, 630.)

As to the fourth of these elements, to which we will refer as the sustained fear element, "sustained fear" within the meaning of Penal Code section 422, subdivision (a)

7

means a fear that continues for "a period of time that extends beyond what is momentary, fleeting, or transitory....  The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear.  [Citation.]"  (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.)

*Analysis*

Appellant's sufficiency-of-the-evidence challenge is directed at the sustained fear element.  He first argues that the evidence was insufficient to establish Muro was in any fear, sustained or otherwise.  In this connection, he argues that the evidence established the following:  Over the course of their relationship, appellant and Muro tried to "emotionally ... prod [each] other" and that they "continually return[ed] for more."  Appellant's threats were, when viewed in this context, nothing more than "meaningless verbal pokes" of the kind that both appellant and Muro habitually engaged in "in their dysfunctional way."  The "verbal exchanges" the couple engaged in "served as platforms to make the other angry," and Muro did not actually believe appellant would harm her, her son or her parents, notwithstanding appellant's threats to do exactly that.

The record, however, does not compel us to accept appellant's interpretation of the evidence.  Muro testified she feared appellant would follow through on his threats because he was an active gang member.  Under the principles summarized above, this testimony by itself constituted substantial evidence that appellant's threats engendered actual fear in Muro.  In addition, the testimony of the three girls in the car with Muro that Muro looked scared, the evidence that Muro called the police, and the testimony of Officer Stephens regarding Muro's demeanor when he spoke to her provide further support for this conclusion.  (See *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538 [call to police after receiving threat is indication victim feared for his safety].)  Appellant's characterization of the record points to, at most, inferences that could be drawn from the evidence that militate in favor of the conclusion that Muro did not

8

experience sustained fear. However, as indicated above, we resolve such conflicts in favor of the judgment.

Appellant also argues that because "[n]o one asked how long the fear lasted or otherwise described the fear to determine if it were a sustained fear," the evidence was insufficient to establish "that [Muro's] fear existed beyond a fleeting moment when appellant spoke the empty threat." Therefore, appellant asserts, the evidence was insufficient to establish that any fear Muro experienced was *sustained* fear. There is no merit to this contention.

Appellant testified she was scared while she was at the scene of the instant offenses, as did the three girls in the car with her at the time appellant struck and threatened Muro; it is reasonably inferable from the testimony of Katie and Ivy that Muro was still scared later, after she had gotten away from appellant, when she arrived at the restaurant across the street; the evidence that Muro called the police after that, when she dropped the girls off, supports the conclusion she was still in fear at that point (see *People v. Melhado*, *supra*, 60 Cal.App.4th at p. 1538); and Officer Stephens testified Muro was "shaking" when he spoke to her still later. The foregoing evidence amply supports the conclusion that Muro's fear extended well beyond the momentary, fleeting or transitory. Substantial evidence supports appellant's conviction of making criminal threats.

### Evidence of Uncharged Acts

With exceptions, "evidence of a person's character or a trait of his or her character ... in the form of ... specific instances of his or her conduct[] is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code,[4] § 1101, subd. (a).) One such exception is found in section 1109, subdivision (a)(1), which, in a criminal

---

[4]     All further statutory references are to the Evidence Code.

9

action in which the defendant is accused of an offense involving domestic violence, "permits the admission of [evidence of] defendant's other acts of domestic violence for the purpose of showing a propensity to commit such crimes," provided that such evidence is not made inadmissible pursuant to section 352.[5] (*People v. Hoover* (2000) 77 Cal.App.4th 1020, 1024.)

There is no dispute that the charged offenses involved domestic violence, within the meaning of section 1109. Appellant argues on appeal, as he did below in his motion in limine, that this evidence should have been excluded under section 352. We disagree.

Evidence is properly excluded under section 352 if its probative value is "substantially outweighed" by the probability that its admission will necessitate undue consumption of time or create a substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.[6] *(People v. Cudjo* (1993) 6 Cal.4th 585, 609.) "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) A trial court's exercise of its discretion under section 352 "'must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*Ibid.*)

---

[5] Section 1109, subdivision (a)(1) provides (with exceptions not applicable here) that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

[6] Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

10

We examine first the probative value of the evidence of the uncharged acts. "Probative value goes to the *weight* of the evidence of other offenses.  The evidence is probative if it is material, relevant, and necessary.  '[How] much "probative value" proffered evidence has depends upon the extent to which it tends to prove an issue by logic and reasonable inference (degree of relevancy), the importance of the issue to the case (degree of materiality), and the necessity of proving the issue by means of this particular piece of evidence (degree of necessity).'" (*People v. Thompson* (1980) 27 Cal.3d 303, 318, fn. 20.)

The evidence of appellant's uncharged acts of domestic violence had a high degree of relevancy.  "'A defendant with a propensity to commit acts similar to the charged crime is more likely to have committed the charged crime than another.'" (*People v. Soto* (1998) 64 Cal.App.4th 966, 989.)  "Indeed, the rationale for excluding such evidence is not that it lacks probative value, but that it is too relevant.  'It may almost be said that it is because of the indubitable relevancy of specific bad acts showing the character of the accused that such evidence is excluded.  It is objectionable not because it has no appreciable probative value but because it has too much.'" (*People v. Fitch* (1997) 55 Cal.App.4th 172, 179.)  The evidence that appellant previously threatened physical violence against Muro and committed a violent act against Echeverria after first threatening her is highly relevant to prove that he committed the similar acts he was charged with in the instant case.

The evidence of the uncharged acts also had a high degree of materiality, in that it went to the central issue in the case, viz., whether appellant committed the acts constituting the charged offenses.

Finally, the evidence of the uncharged acts had a high degree of necessity.  The testimony of the lone defense witness was, in essence, that appellant neither threatened nor struck Muro.  This was directly contrary to the testimony of Muro and her three

11

young companions, each of whom might be subject to a claim of bias. Thus, the evidence of the uncharged acts was necessary to support Muro's account of events.

We turn now to the prejudice portion of the analysis. "The prejudice which exclusion of evidence under Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence. '[All] evidence which tends to prove guilt is prejudicial or damaging to the defendant's case. The stronger the evidence, the more it is "prejudicial." The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying [Evidence Code] section 352, "prejudicial" is not synonymous with "damaging."'" (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

Relevant factors in determining prejudice under section 352 include whether the uncharged acts were more inflammatory than the charged conduct, the possibility that evidence of the uncharged acts might confuse the jury and how recent were the uncharged acts. (See *People v. Poplar* (1999) 70 Cal.App.4th 1129, 1139.) The uncharged acts evidence was no more inflammatory than the testimony of Muro and the three girls in describing the instant offenses. Moreover, appellant does not assert, and we cannot discern, any probability of confusing the jury with evidence of prior acts of domestic violence. Finally, the incidents were relatively recent, occurring, respectively, within two months and approximately two years of the instant offenses.

Appellant ignores the probative value side of the equation. Rather, he argues, the evidence of the uncharged acts was unduly prejudicial because, he asserts, the evidence of the charged offenses was "weak," and "a jury is likely to give evidence of past offenses greater weight than ordinary when evaluating the question of guilt in a weak case." We disagree. First, we reject appellant's characterization of the evidence exclusive of the uncharged acts evidence as weak. And, in any event, there is no logical

12

connection between "undue prejudice" within the meaning of section 352 and the strength of the evidence exclusive of the uncharged acts evidence against a defendant.[7]

In summary, the uncharged acts evidence had a high degree of probative value, and little or no potential for creating undue prejudice. Therefore, the trial court was well within its discretion in finding that the uncharged acts evidence was not excludable under section 352.

Appellant also argues that admission of the uncharged acts evidence rendered his trial fundamentally unfair, in violation of his right to due process of law under the Fourteenth Amendment to the United States Constitution. There is no merit to this contention.

We adopt the following statement from *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095-1096: "In order to establish a due process violation, appellant bears a heavy burden of showing that admission of evidence pursuant to section 1109 unduly offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. [Citations.] As our Supreme Court … observed: 'The admission of relevant evidence will not offend due process unless the evidence is so prejudicial as to render the defendant's trial fundamentally unfair.' (*People v. Falsetta* (1999) 21 Cal.4th 903, 913 (*Falsetta*); see also *Estelle v. McGuire* (1991) 502 U.S. 62, 70; *Spencer v. Texas* (1967) 385 U.S. 554, 562-564.)

"In *Falsetta*, the court considered a due process challenge to section 1108, a provision similar to section 1109 in that it permits the admission of a defendant's other sex crimes for the purpose of showing a propensity to commit those crimes. Borrowing

---

[7] The strength of the evidence of the charged offenses is relevant to a section 352 analysis in this respect: The weaker the evidence of the charged offenses, the higher the degree of necessity of the evidence of uncharged acts, and therefore the more probative is the evidence of the uncharged acts.

liberally from the analysis in *People v. Fitch*[, *supra*,] 55 Cal.App.4th 172, 177-184, in which the Third Appellate District had upheld section 1108 in the face of a due process challenge, the *Falsetta* court held as follows: "[W]e think the trial court's discretion to exclude propensity evidence under section 352 saves section 1108 from defendant's due process challenge. As stated in *Fitch*, "Section 1108 has a safeguard against the use of uncharged sex offenses in cases where the admission of such evidence could result in a fundamentally unfair trial. Such evidence is still subject to exclusion under ... section 352. (... § 1108, subd. (a).) By subjecting evidence of uncharged sexual misconduct to the weighing process of section 352, the Legislature has ensured that such evidence cannot be used in cases where its probative value is substantially outweighed by the possibility that it will consume an undue amount of time or create a substantial danger of undue prejudice, confusion of issues, or misleading the jury. (... § 352.)"' (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

"Admission of evidence of prior acts of domestic violence under section 1109 is similarly subject to the limitations of section 352. (§ 1109, subd. (a).) Under the reasoning of *Falsetta*, this safeguard should ensure that section 1109 does not violate the due process clause. (See *Falsetta*, *supra*, 21 Cal.4th at p. 917.) Since *Falsetta* was decided, several cases from the California Courts of Appeal have applied its reasoning to reject claims that admission of prior acts of domestic violence pursuant to section 1109 violates due process. (*People v. James* (2000) 81 Cal.App.4th 1343, 1353 (*James*); *People v. Brown* (2000) 77 Cal.App.4th 1324, 1335 [same]; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1027-1028 [same]; *People v. Johnson* (2000) 77 Cal.App.4th 410, 417-420 [same].) We agree with the rule of these recent cases and, accordingly, reject appellant's due process claim."

## DISPOSITION

The judgment is affirmed.

14