Filed 12/30/24  P. v. Thompson CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BILLY THOMPSON,<br><br>    Defendant and Appellant. | B327730<br><br>(Los Angeles County<br>Super. Ct. No. A038839) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Reversed with directions.

John A. Colucci, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Christopher G. Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1988 a jury convicted Billy Thompson of first degree murder and second degree murder. The jury found true a multiple-murder special circumstance as to the first degree murder, and a firearm allegation as to the second degree murder. In 2022 Thompson petitioned for resentencing under Penal Code section 1172.6 (former section 1170.95).[1] The superior court denied the petition, finding Thompson did not establish a prima facie case for relief. On appeal, Thompson contends the superior court should have issued an order to show cause as to his first degree murder conviction only. He maintains the record of conviction—specifically, the multiple-murder special circumstance finding and the prosecutor's closing argument— does not conclusively refute his allegations in his petition that he was convicted of first degree murder under the natural and probable consequences doctrine and that he could not be convicted of murder under current law. We reverse the court's denial as to his first degree murder conviction and otherwise affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Evidence at Trial, the Verdict, and the Appeal*

We provide a summary of the evidence at trial from our opinion in *People v. Thompson* (Sept. 25, 1990, B048678) [nonpub. opn.]:[2]

---

[1]    Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) All undesignated statutory references are to the Penal Code.

[2]    We summarize the facts to provide context and background and do not rely on them in deciding the merits of this appeal.

"On May 15, 1985, Ernest Malo died of multiple stab wounds—75 stab and slashing wounds to the head, neck, torso, and arms.

"Steven Save, a friend of [Thompson], attended a party in [Thompson's] home at 1210 C Street on the night of May 15; he observed [Thompson] and Malo at the mouth of an alley one house to the side of [Thompson's] house, fighting and hitting each other; while [Thompson] was on top of Malo, Armando Macias, another friend, came up, pulled a knife out of a sheath and stabbed Malo in the back four times. Save was not sure who took Malo down the alley but acknowledged he told police shortly after the homicide that he saw [Thompson] and Macias take Malo down the alley; when asked if that was 'what happened,' Save replied, 'I guess.' Save left; a couple hours later, [Thompson] came to his house; asked if he told police that '[Thompson] told [him] couple hours after the incident that Malo was calling [Thompson's] name so they had to finish him'[;] Save answered, 'I guess,' then acknowledged 'that's what it says on the tape.'

"On May 15, Officer Drouin saw the body of . . . Malo in an alley toward the rear of 1231 West B Street; there were 'many, many stab wounds' on the body which was covered with a 'tremendous amount of blood'; he followed a trail of blood leading from the body, along the intersecting alley to C Street, to [Thompson's] house at 1210 C Street.

". . . On February 11, 1987 Luther [Andrews][3] died of a gunshot wound to the chest; the gunshot perforated [Andrews'] heart and both lungs.

---

[3] Although the prior opinion referred to the victim as "Luther Adams," we will refer to him as Luther Andrews, the name that

"Rosie Sanchez, living with [Thompson] at 1210 C Street on February 11, saw a red car towards the back of her house early that morning; Marvin Ford yelled to [Thompson] in the backyard, 'that guy [Andrews] wanted something, but not to sell him anything because he thought he was a cop'; she understood the 'something' to be narcotics. The man exited the red car waving a shiny chrome object she 'thought' to be a gun; Ford ran away down the alley and [Thompson], standing from three to five car lengths away, shot the man once with a .357-caliber handgun: the man ran, then fell; a bald man, who was also in the red car, put him back in the car and drove it away; the next day she saw the car at a nearby liquor store lot.

"On February 11, Officer Wierman saw the body of [Andrews] in a red car parked in a liquor store lot; there was a gunshot wound in [Andrews'] left chest; his body lay with the feet at the door and the head at the car's console and there was dirt around as if he had been pulled into the front passenger seat. There were no weapons with the body. Officer Wierman followed the sand and mud tracks of the red car to a spot 228 feet south of C Street where he found a pool of blood, and from there he followed a trail of blood to a dirt lot almost directly behind [Thompson's] house at 1210 C street; at the dirt lot there was a slipper that matched one worn by [Andrews]; the lot behind [Thompson's] house was about three-quarters of a block from where [Andrews'] body was found."

In 1988, a jury convicted Thompson of the first degree murder of Malo (count 2; § 187, subd. (a)), and the second degree

appears in the information, the verdict form, and the trial transcript.

4

murder of Andrews (count 1; § 187, subd. (a)).  The jury also found true a multiple-murder special circumstance (§ 190.2, subd. (a)(3)) as to the first degree murder of Malo, and that Johnson personally used a firearm (§ 12022.5) as to the second degree murder of Andrews.  The trial court sentenced Johnson to life without the possibility of parole for the first degree murder plus 15 years to life for the second degree murder and two years for the firearm allegation.  We affirmed the convictions.  (*People v. Thompson, supra*, B048678.)

B.      *The Section 1172.6 Proceedings*

On January 26, 2022 Thompson filed a petition for resentencing under section 1172.6 as to both counts 1 and 2.  The superior court appointed counsel for Thompson and set the matter for further proceedings.  The People filed an opposition, and defense counsel filed a response.

At the prima facie hearing, defense counsel argued Thompson was eligible for relief because the trial court instructed the jury with the natural and probable consequences doctrine.  The People responded that "for the jury to have found true the special circumstance, they had to find that the defendant had the intent to kill."  The superior court denied the petition, ruling "the jury specifically found that defendant acted with intent to kill" as to both counts.

Thompson filed a timely notice of appeal.  On appeal, he focuses only on the contention that he is eligible for resentencing as to his conviction on count 2, for first degree murder of Malo.

## *DISCUSSION*

A.    *Relevant Legal Principles*

Effective 2019, Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Reyes* (2023) 14 Cal.5th 981, 984; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and narrowed the felony-murder rule (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel*); *People v. Strong* (2022) 13 Cal.5th 698, 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*)).  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on one's participation in a crime and requires proof of malice to convict a principal of murder, except under the revised felony-murder rule in section 189, subdivision (e).  The latter provision now requires the People to prove that the defendant was the actual killer (§ 189, subd. (e)(1)); an aider and abettor to murder who had the intent to kill (§ 189, subd. (e)(2)); or a major participant in an underlying felony listed in section 189, subdivision (a), who acted with reckless indifference to human life as described in subdivision (d) of section 190.2.  (§ 189, subd. (e)(3); see *Curiel*, at p. 448; *People v. Wilson* (2023) 14 Cal.5th 839, 868-869; *Strong*, at p. 708; *Gentile*, at pp. 842-843.)

SB 1437 also provided a procedure (codified in section 1172.6) for "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to petition the superior court to vacate the conviction and be resentenced on any

6

remaining counts if the petitioner could not now be convicted of murder because of the changes to sections 188 and 189. (§ 1172.6, subd. (a).)

If a section 1172.6 petition contains all the required information, the sentencing court must appoint counsel to represent the petitioner if requested. (§ 1172.6, subd. (b)(1)(A), (b)(3); see also *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.) The prosecutor must then file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing that the petitioner is entitled to relief. (§ 1172.6, subd. (c).) If the petitioner makes that showing, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder and resentence the petitioner on any remaining counts. (§ 1172.6, subds. (c), (d)(1).)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971; see *Curiel*, *supra*, 15 Cal.5th at p. 460.) The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.) "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the

exercise of discretion.' " (*Lewis*, at p. 972; see *People v. Eynon* (2021) 68 Cal.App.5th 967, 975.)

"Nevertheless, the court may appropriately deny a petition at the prima facie stage if the petitioner is ineligible for relief *as a matter of law*. ' "[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner,' " ' thereby deeming the petitioner ineligible." (*People v. Harden* (2022) 81 Cal.App.5th 45, 52; see *Curiel, supra*, 15 Cal.5th at p. 460; *Lewis, supra*, 11 Cal.5th at p. 971.) "We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c)." (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251.)

B.    *Relevant Jury Instructions and the Prosecutor's Closing Argument*

The trial court instructed the jury with the following relevant instructions:  (1) aiding and abetting (CALJIC Nos. 3.00-3.01); (2) murder (CALJIC No. 8.10); (3) malice aforethought (CALJIC 8.11); (4) first degree murder (CALJIC No. 8.20); (5) second degree murder (CALJIC No. 8.30); and (6) multiple-murder special circumstance (CALJIC No. 8.80).

As to malice aforethought, the court instructed the jury with a modified version of CALJIC No. 8.11 (1983 rev.) (4th ed. 1987).  The instruction omitted all references to implied malice. It stated in part:  "Malice is express when there is manifested an intention unlawfully to kill a human being."

For the first degree murder instruction, the court gave the 1979 version of CALJIC No. 8.20 (1979 rev.) (4th ed. 1979).  The instruction provided in part:  "All murder which is perpetrated by

any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree."

As to aiding and abetting, the court instructed the jury with the 1987 version of CALJIC No. 3.00 (1987 rev.) (4th ed. 1987) and the 1984 version of CALJIC No. 3.01 (1984 rev.) (4th ed. 1987). CALJIC No. 3.00 stated that principals involved in committing a crime are "equally guilty" and include (1) those who "directly and actively commit or attempt to commit the act constituting the crime" or (2) those who "aid and abet the commission or attempted commission of the crime." It also included a bracketed portion that stated, "One who aids and abets is not only guilty of the particular crimes that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any act that he knowingly and intentionally aided or encouraged. It is for you, the jury, to determine whether the defendant is guilty of the crime allegedly contemplated, and, if so, whether the crime charged was a natural and probable consequence of the criminal act knowingly and intentionally encouraged."

CALJIC No 3.01 stated in part, "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the offense, by act or advice aids, promotes, encourages or instigates the commission of the crime."

As to the multiple-murder special circumstance, the trial court instructed the jurors with the 1984 version of CALJIC No. 8.80 (1984 rev.) (4th ed. 1987). It stated in part, "If you find the defendant in this case guilty of murder of the first degree, you must then determine if murder was committed under the

9

following special circumstance:  multiple murder conviction. . . . If defendant was an aider and abettor but not the actual killer, it must be proved beyond a reasonable doubt that he intended to aid in the killing of a human being before you are permitted to find the alleged special circumstance of that first degree murder to be true."  The court also instructed the jurors with the People's requested jury instruction, which stated in part, "If you find beyond a reasonable doubt that the defendant in Count II [with victim Malo] is either the actual killer or an aider or abett[or], but you are not certain as to which, then you must also find beyond a reasonable doubt that the defendant intended either to kill a human being or to aid another in the killing of a human being, in order to find the special circumstance to be true.  On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."

During closing argument, the prosecutor argued Thompson personally killed Andrews:  he "pull[ed] out a gun and [shot]" Andrews in a "kind of quick type of situation."  The prosecutor also told the jury Thompson had an intent to kill when he shot Andrews.  As the prosecutor stated, "Simply, if I take a gun out and shoot him, hit him in the chest, he dies, pretty obvious what my intent is. . . .  [T]he intent to kill . . . appears to be obvious."  The prosecutor then argued the murder of Andrews was a second degree murder because there was "not enough . . . evidence to show premeditation and deliberation."

As to the murder of Malo, the prosecutor said Thompson "was beating on . . . Malo . . . and while he was beating on . . . Malo, this person . . . Macias . . . came up, took the knife out of

10

[Thompson's] . . . shoe [and] stabbed [Malo] about four times." Then "[t]hey dragged him to a whole separate area and finished him off." Acknowledging there was no direct evidence that Thompson stabbed Malo to death, the prosecutor argued Thompson either personally killed Malo or aided and abetted his murder. The prosecutor stated, "[Y]ou as a juror have to decide whether or not this defendant was the direct participant, that is, did he actually do some of the stabbing, or was he an aider and abettor. . . . So even if you, as a juror, conclude that . . . Macias did all the stabbing in this case, [Thompson's] act, by helping [Macias] carry, drag this poor gentleman down the alley, makes him an aider and abettor."

Under either theory of liability, the prosecutor told the jury Thompson had the intent to kill Malo based on the nature of the injuries alone: "It's an obvious intent to kill when you slash someone's throat." Further, the murder of Malo was a first degree murder, the prosecutor argued, because the murder was "considered beforehand." The prosecutor pointed to the following facts as evidence Malo's murder was "considered beforehand": "they had to walk down a couple of alleyways before they got to the area where . . . Malo eventually died"; there was 75 stab wounds; Malo's throat was slashed; and Thompson said, "We had to finish him off."

For the special circumstance, the prosecutor stated, "If you come to the conclusion as a juror, and you find the facts to be that when he and this person [Macias] killed . . . Malo, that he was an aider and abettor, that he did not actually stab or do the killing directly himself, the law requires you to also find . . . that he had the intent to kill . . . Malo . . . . It's pretty obvious what both persons intend[ed] . . . even if you were not the one that did the

11

stabbing.  [¶]  The intent to kill . . . is very, very obvious."  The prosecutor did not refer to the natural and probable consequences doctrine at any point.

C.      *Thompson's First Degree Murder Conviction Is Not Barred from Relief Under Section 1172.6 as a Matter of Law*

Thompson argues the superior court erred in failing to issue an order to show cause for his first degree murder conviction for the death of Malo because his conviction did not require the jury to find he had an intent to kill.  We agree.  The jury instructions, verdict forms, and prosecutor's closing argument do not conclusively establish that Thompson is ineligible for section 1172.6 relief as a matter of law.

1.      *Thompson Could Have Been Convicted Under the Natural and Probable Consequences Doctrine*

The trial court instructed the jury that it could convict Thompson of first degree murder under either of two theories of liability:  (1) as the actual perpetrator with premeditated and deliberate express malice; or (2) as an aider and abettor.  Of importance here, the aiding and abetting instructions included the 1987 version of CALJIC No. 3.00, which stated principals are "equally guilty."  It also provided in part:  "One who aids and abets is not only guilty of the particular crimes that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and probable consequences of any act that he knowingly and intentionally aided or encouraged."  This was an instruction on the natural and probable consequences doctrine.  (*People v. Prettyman* (1996) 14 Cal.4th 248, 263-264 (*Prettyman*) [the natural and probable consequences doctrine was in CALJIC No. 3.00 from 1976 to 1988].)  Given these

12

instructions, the jury could have convicted Thompson of first degree murder based on the natural and probable consequences doctrine. (See *Gentile*, *supra*, 10 Cal.5th at p. 838 [until the Supreme Court decided *People v. Chiu* (2014) 59 Cal.4th 155, it was possible to be convicted of first degree premeditated murder under the natural and probable consequences doctrine].)

The verdict forms did not eliminate this possibility. The forms did not require the jurors to identify the theory under which they convicted Thompson. Nor did the forms require the jurors to identify whether Thompson was guilty as a perpetrator or as an aider and abettor. (See *Curiel*, *supra*, 15 Cal.5th at p. 467 [jury found defendant guilty of first degree murder, "but it was not required to identify which theory it found persuasive"].) Therefore, it was possible the jury could have found Johnson guilty of first degree murder as an aider and abettor under the natural and probable consequences doctrine. (See *Curiel*, at p. 468 ["The jury could have relied on the natural and probable consequences doctrine to convict Curiel of murder, and the findings required under that theory—even when combined with the finding of intent to kill required by the gang-murder special circumstance—do not encompass all of the elements of any theory of murder under current law"]; cf. *People v. Coley* (2022) 77 Cal.App.5th 539, 546 [defendant "was ineligible for resentencing as a matter of law" because "the jury did not receive instructions that it could convict [him] based on . . . the natural and probable consequences doctrine at trial"].)

The People assert the jury was not instructed on the natural and probable consequences doctrine because "[m]urder was the target crime." The record does not support this assertion. The 1987 version of CALJIC No. 3.00 did not require

13

the trial court to identify a target crime. It was not until 1996 in *Prettyman*, *supra*, 14 Cal.4th 248 that the Supreme Court held that, when the prosecution relies on the natural and probable consequences theory of accomplice liability and the evidence supports an instruction on that theory, the trial court must give "an instruction describing or defining the elements of the target crimes." (*Id.* at p. 266; see *People v. Lopez* (2023) 88 Cal.App.5th 566, 572, fn. 6 [because the defendant's trial predated *Prettyman*, the "natural and probable consequences jury instruction did not specify the target crime he was charged with aiding and abetting"].) Because the target crime was unidentified, the jury could have " 'indulged in unguided speculation' "—it could have found Thompson guilty of first degree murder by finding he aided and abetted some unspecified crime, such as an assault, and the natural and probable consequences of that conduct was murder. (See *Prettyman*, at p. 266.)

>    2. *The Special Circumstance Finding Does Not Conclusively Establish Thompson's Ineligibility*

The People argue Thompson is not eligible for resentencing under section 1172.6 because the multiple-murder special circumstance instruction required the jury to find Thompson had the intent to kill Malo. We are not persuaded.

"To find true the multiple-murder special-circumstance allegation, a jury must find that the defendant has been convicted of at least two counts of murder, at least one of which must be first degree murder, and that the defendant either actually killed or intended to kill *at least one* of the victims." (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 495, italics added.) However, our courts "have never held that the multiple-murder special circumstance requires a jury to find the defendant

14

intended to kill *every victim*." (*People v. Dennis* (1998) 17 Cal.4th 468, 516, italics added; *People v. Holmes, McClain, & Newborn* (2022) 12 Cal.5th 719, 785 ["The multiple-murder special circumstance does not require a finding of intent to kill more than one victim."]; *People v. Rogers* (2006) 39 Cal.4th 826, 892 ["Our state law never has required a jury to find intent to kill both victims in order for the multiple-murder special circumstance to be found true."].) Thus, the true multiple-murder special-circumstance finding means the jury found that Thompson intended to kill at least one of the two victims. However, it does not conclusively establish that he intended to kill both. Because the trial court instructed the jury on the natural and probable consequences doctrine, in addition to murder with express malice aforethought, it is possible the jury could have found Thompson guilty of the first degree murder of Malo under the natural and probable consequences doctrine and guilty of the second degree murder of Andrews under a theory that he was the actual perpetrator with intent to kill. (See e.g., *People v. Maciel* (2013) 57 Cal.4th 482, 521 [the special circumstance could apply if one conviction was based on actual killing or harboring express malice and the other conviction was based on the natural and probable consequences doctrine].) Thus, the jury instruction on the special circumstance does not allow us to determine as a matter of law which of the two murder counts was necessarily based on Thompson harboring express malice.

3.   *The Prosecutor's Closing Argument Did Not Eliminate the Possibility the Jury Convicted Based on the Natural and Probable Consequences Doctrine*

The People correctly point out that during closing arguments pertaining to the murder of Malo, the prosecutor did not argue the natural and probable consequences doctrine applied, and focused only on the theories that Thompson was either the actual killer or a direct aider and abettor who harbored an intent to kill.  The prosecutor further argued that if the jury believed Thompson was only an aider and abettor to Malo's murder, in order to find the multiple-murder special circumstance true, "the law requires [the jury] to also find . . . [Thompson] had the intent to kill . . . Malo."  Despite the prosecutor's focus on Thompson's intent to kill Malo, we agree with the defense that the prosecutor's closing argument did not foreclose the possibility that the jury convicted Thompson of the murder of Malo under a now-invalid theory.

Although the prosecutor argued "the law require[d]" the jury to find Thompson harbored the intent to kill Malo, "the theories suggested [by the prosecutor] are not the exclusive theories that may be considered by the jury." (*People v. Perez* (1992) 2 Cal.4th 1117, 1126.)  Courts " 'presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' (*People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8.)  '[P]rosecutorial commentary should not be given undue weight in analyzing how a reasonable jury understood . . . instructions.  Juries are warned in advance that counsel's remarks are mere argument, missteps can be challenged when they occur, and juries generally understand that counsel's

16

assertions are the "statements of advocates."  Thus, argument should "not be judged as having the same force as an instruction from the court." ' "  (*People v. Cortez* (2016) 63 Cal.4th 101, 131; see *People v. Centeno* (2014) 60 Cal.4th 659, 676 [" '[w]hen argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former' "].)

Here, the trial court also instructed the jury with CALJIC No. 1.00, which provided, in relevant part:  "Your . . . duty is to apply the rules of law that I state to you to the facts as you determine them and in this way to arrive at your verdict.  [¶]  It is my duty in these instructions to explain to you the rules of law that apply to this case.  You must accept and follow the rules of law as I state them to you."  Because the trial court then instructed the jury with the now-invalid natural and probable consequences theory, we cannot conclusively rule out, based solely on the prosecutor's argument, that the jury convicted Thompson on a natural and probable consequences theory that did not require an intent to kill Malo.  (See *People v. Lee* (2023) 95 Cal.App.5th 1164, 1188-1190 [although prosecutor proceeded solely on theory that defendant personally committed a provocative act, with no suggestion defendant was liable because of a provocative act committed by someone else, court was unable to conclude prosecutor's closing argument "overrode" the now-invalid jury instructions]; cf. *People v. James* (2000) 81 Cal.App.4th 1343, 1365, fn. 10 ["We do not consider comments by counsel during closing argument to determine whether the error in the instruction was cured.  The jurors were told that if anything counsel said conflicted with the court's instructions, they must follow the instructions.  (CALJIC No. 1.00.)"].)

17

## *DISPOSITION*

The order denying Thompson's petition under section 1172.6 is reversed.  The superior court is directed to issue an order to show cause and conduct further proceedings under section 1172.6 on the first degree murder conviction and deny Thompson's petition with respect to his second degree murder conviction.


STONE, J.

We concur:


MARTINEZ, P. J.


SEGAL, J.